**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ABINGDON DIVISION**

| | |
|---|---|
| **BRYAN K. STUMBO,** ) | |
|    Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 1:06cv00097 |
| ) | **MEMORANDUM OPINION** |
| ) | |
| ) | |
| **MICHAEL J. ASTRUE,**[1] ) | |
|  **Commissioner of Social Security,** ) | By: PAMELA MEADE SARGENT |
|    Defendant ) | United States Magistrate Judge |

In this social security case, I vacate the final decision of the Commissioner denying benefits and remand this case for further consideration of Stumbo's mental impairments and their effect on his work-related abilities.

*I. Background and Standard of Review*

Plaintiff, Bryan K. Stumbo, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claims for supplemental security income, ("SSI"), and disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 and § 1381 *et seq.* (West 2003 & Supp. 2007). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007, and is, therefore, substituted for Jo Anne B. Barnhart as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d)(1).

-1-

transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Stumbo filed his applications for SSI and DIB on or about August 9, 2004, alleging disability as of June 28, 2004, based on lumbar disc syndrome and degenerative disc disease . (Record, ("R."), at 47-49, 53, 219-23.) The claims were denied initially and on reconsideration. (R. at 33-35, 39, 40-42, 225-26, 229-31.) Stumbo then requested a hearing before an ALJ. (R. at 43.) The ALJ held a hearing on January 24, 2006, at which Stumbo was represented by counsel. (R. at 239-57.)

By decision dated April 24, 2006, the ALJ denied Stumbo's claims. (R. at 17-24.) The ALJ found that Stumbo met the nondisability insured status requirements of the Act for DIB purposes through the date of the decision. (R. at 19.) The ALJ found that Stumbo had not engaged in substantial gainful activity since the alleged onset of disability. (R. at 19.) The ALJ found that the medical evidence established that

Stumbo had severe impairments, namely musculoskeletal impairments and gastrointestinal impairments, but he found that Stumbo's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19-20.) The ALJ also found that Stumbo's allegations regarding his limitations were not totally credible. (R. at 22.) The ALJ found that Stumbo had the residual functional capacity to perform sedentary[2] to light[3] work that did not require more than occasional bending, stooping and crouching. (R. at 20.) Thus, the ALJ found that Stumbo could not perform any of his past relevant work. (R. at 22.) Based on Stumbo's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ concluded that Stumbo could perform jobs existing in significant numbers in the national economy, including those of a sorter, a hand packer, a cashier, an inspector and an assembler. (R. at 23.) Therefore, the ALJ found that Stumbo was not under a disability as defined in the Act, and that he was not eligible for benefits. (R. at 23-24.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2006).

After the ALJ issued his decision, Stumbo pursued his administrative appeals, (R. at 13), but the Appeals Council denied his request for review. (R. at 7-10.) Stumbo then filed this action seeking review of the ALJ's unfavorable decision, which now

---

[2]Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (2006).

[3]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, he also can do sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2006).

-3-

stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2006). The case is before this court on Stumbo's motion for summary judgment filed February 16, 2007, and the Commissioner's motion for summary judgment filed March 20, 2007.

*II. Facts*

Stumbo was born in 1965, (R. at 47, 242), which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Stumbo completed the eleventh grade[4] and has past work experience as a factory worker, a general laborer, a mechanic and a truck driver. (R. at 54, 63, 72, 242.) Stumbo stated that he was unable to work due to back and ankle pain and problems with his "nerves." (R. at 245-47.) He stated that he could sit for up to 45 minutes without interruption. (R. at 246.) Stumbo stated that he could stand for up to 40 minutes without interruption. (R. at 246.) He stated that he would rather be by himself and that he was easily upset. (R. at 247.) Stumbo stated that he had been arrested and jailed on two occasions on assault and battery charges. (R. at 249.) He stated that he was receiving counseling. (R. at 249.) He stated that he had not consumed alcoholic beverages for several months. (R. at 250.)

Cathy Sanders, a vocational expert, also was present and testified at Stumbo's hearing. (R. at 253-56.) Sanders was asked to consider a hypothetical individual of Stumbo's age, education and work experience, who had the residual functional capacity to occasionally lift and carry objects weighing up to 15 pounds and

---

[4]Stumbo reported on his Disability Report that he completed high school. (R. at 58.) However, he testified at his hearing that he completed the eleventh grade. (R. at 242.)

frequently lift and carry objects weighing up to 10 pounds, who could stand or walk for up to four hours in an eight-hour workday and who could occasionally bend, stoop and crouch. (R. at 254.) Sanders testified that such an individual could perform work as a hand packager, an assembler, a cashier, an inspector and a sorter. (R. at 254.) Sanders stated that if the same individual was limited to performing simple, low-stress jobs, the above-mentioned jobs would be eliminated. (R. at 254.)

In rendering his decision, the ALJ reviewed records from Johnston Memorial Hospital; Smyth County Community Hospital; Smyth Regional Orthopedics; Dr. Robert Saunders, M.D.; Louis A. Perrott, Ph.D., a state agency psychologist; E. Hugh Tenison, Ph.D., a state agency psychologist; Dr. Richard M. Surrusco, M.D., a state agency physician; Bristol Memorial Hospital; Dr. David Smith, M.D.; Gary T. Bennett, Ph.D., a licensed clinical psychologist; Mount Rogers Community Counseling Services; and Abingdon Primary Care. Stumbo's counsel also submitted record from Mount Rogers Community Counseling Services to the Appeals Council.[5]

The record shows that in 1988 Stumbo had x-rays and an MRI performed at Bristol Memorial Hospital. (R. at 181-82.) X-rays of Stumbo's lumbar spine showed a slight narrowed interspace at the L5-S1 level. (R. at 181.) An MRI of Stumbo's lumbar spine showed degenerative disc disease at the L5-S1 level with right paracentral focal protrusion versus mild herniation. (R. at 182.)

---

[5]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 7-10), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

X-rays of Stumbo's chest performed at Johnston Memorial Hospital on October 8, 2002, were normal. (R. at 100.) On October 21, 2002, an ultrasound of Stumbo's abdomen was normal. (R. at 98.) An x-ray of Stumbo's abdomen showed a small sliding hiatal hernia with marked gastroesphageal reflux. (R. at 99.)

On June 28, 2004, Stumbo was admitted to Smyth County Community Hospital for a left ankle fracture. (R. at 102-08.) Stumbo reported a long history of increased alcohol intake. (R. at 102.) Stumbo reported consuming a case or more of beer a day. (R. at 102.) He underwent surgery and was discharged on June 29, 2004. (R. at 102.)

On July 13, 2004, Stumbo had a follow-up examination with Dr. Jean Marine, M.D. (R. at 119.) Dr. Marine reported that Stumbo's fracture was stable. (R. at 119.) She reported that Stumbo had a tendency to consume a moderate amount of alcoholic beverages. (R. at 119.) Stumbo reported that Xanax calmed him, which allowed him to decrease his alcohol intake. (R. at 119.) On July 14, 2004, Dr. Marine completed a medical evaluation form indicating that Stumbo was unable to work due to a left ankle fracture. (R. at 130-31.) She indicated that Stumbo was limited in his ability to lift objects, bend, stoop, reach, stand for greater than one hour at a time, walk distances greater than 50 feet and climb four to six steps. (R. at 131.) She indicated that she had advised Stumbo to reduce his work hours, but that she had not advised him to quit his job. (R. at 131.) On July 27, 2004, Dr. Marine reported that x-rays of Stumbo's left ankle showed good alignment of the fracture and no widening of the syndesmosis. (R. at 118.) On September 13, 2004, Stumbo underwent removal of the syndesmosis screw. (R. at 143-47.) On January 11, 2005, Dr. Marine reported that Stumbo had some decreased range of motion in his left ankle, but that the ankle was

still functional. (R. at 109.) Dr. Marine reported that Stumbo could return to doing some type of light-duty work, which allowed intermittent sitting and standing. (R. at 109.)

On December 27, 2004, Dr. Robert Saunders, M.D., examined Stumbo. (R. at 154-59.) Stumbo reported that he performed household chores, which included cooking, vacuuming, dishwashing and mopping. (R. at 155.) Stumbo reported a history of alcohol abuse. (R. at 155.) Dr. Saunders reported that Stumbo did not appear to be in acute distress, but appeared to be moderately anxious. (R. at 156.) Stumbo had a normal gait. (R. at 156.) Cervical flexion, extension, lateral flexion and rotation were within normal limits. (R. at 156.) Dorsolumbar flexion and extension were restricted. (R. at 157.) Stumbo had normal strength in the upper and lower extremities. (R. at 157.) X-rays of Stumbo's lumbar spine were normal. (R. at 160, 217.) Dr. Saunders diagnosed low back pain, decreased range of motion of the dorsolumbar spine, deconditioning, anxiety and history of alcohol abuse. (R. at 157-58.) Dr. Saunders reported that Stumbo could stand and/or walk for up to four hours in an eight-hour workday and that his ability to sit was not restricted. (R. at 158.) He reported that Stumbo could frequently lift and carry items weighing up to 10 pounds and occasionally lift and carry items weighing up to 15 pounds. (R. at 158.) Dr. Saunders reported that Stumbo could occasionally bend, stoop and crouch. (R. at 158.) No manipulative, visual, communicative or environmental limitations were noted. (R. at 158-59.)

On February 3, 2005, Dr. Richard M. Surrusco, M.D., a state agency physician,

indicated that Stumbo had the residual functional capacity to perform medium work.[6] (R. at 174-80.) No postural, manipulative, visual, communicative or environmental limitations were noted. (R. at 176-77.)

On February 4, 2005, Louis A. Perrott, Ph.D., a state agency psychologist, indicated that Stumbo suffered from a nonsevere anxiety-related disorder and substance addiction disorder. (R. at 161-73.) Perrott also indicated that Stumbo had mild restrictions of his activities of daily living and in maintaining concentration, persistence or pace. (R. at 171.) Perrott indicated that Stumbo did not have any difficulties in maintaining social functioning and that he had not experienced any episodes of decompensation. (R. at 171.) This assessment was affirmed by E. Hugh Tenison, Ph.D., another state agency psychologist, on April 14, 2005. (R. at 161.)

On March 4, 2005, Dr. Theodore Thompson, M.D., saw Stumbo for complaints of stomach problems. (R. at 205-07.) Stumbo's back had full range of motion, and no tenderness of the spine was noted. (R. at 206.) Straight leg raising tests were negative. (R. at 206.) Dr. Thompson diagnosed nausea with vomiting, rebound tenderness in the right upper quadrant of the abdomen, psoriasis and backache. (R. at 206.) On March 22, 2005, Dr. Thompson saw Stumbo for his complaints of upper quadrant pain. (R. at 202-04.) Stumbo's back had full range of motion, and no tenderness of the spine was noted. (R. at 203.) An ultrasound of Stumbo's gallbladder showed a thickened gallbladder wall. (R. at 204, 216.) Dr. Thompson diagnosed nausea with vomiting, rebound tenderness in the right upper quadrant of the abdomen, dysfunctional

---

[6]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2006).

gallbladder as well as gastritis, chronic reflux esophagitis, psoriasis, backache and adjustment disorder with anxiety and depressed mood. (R. at 204.) An endoscopic procedure was performed on March 28, 2005, which showed normal vocal cords, esophagitis in the distal esophagus, a medium, sliding hiatal hernia, gastritis, probably in the total stomach, and a normal duodenum. (R. at 214.) An MRI of Stumbo's lumbar spine, which was performed on June 16, 2005, showed degenerative changes at the L5-S1 level. (R. at 210-11.)

On March 25, 2005, Dr. David Smith, M.D., saw Stumbo for his complaints of reflux symptoms. (R. at 212-13.) Stumbo also reported sleep disturbances, anxiety, a change in personality and depression. (R. at 212.) Dr. Smith reported that Stumbo had normal movement of all extremities. (R. at 213.) Motor examination demonstrated no dysfunction. (R. at 213.) Dr. Smith diagnosed chronic reflux esophagitis. (R. at 213.)

On May 31, 2005, Stumbo was seen at Mount Rogers Community Counseling Services for individual counseling. (R. at 201.) He reported suicidal ideations with no plan or intent. (R. at 201.) He reported that he struggled with controlling his temper. (R. at 201.) On October 24, 2005, Stumbo reported that he had been incarcerated for domestic violence. (R. at 200.) He reported that he was attending Abuse Alternatives for anger management as a condition of his probation. (R. at 200.) It was reported that Stumbo's condition was deteriorating. (R. at 200.) On June 5, 2006, it was reported that Stumbo's concentration and memory were impaired. (R. at 238.) His mood was described as angry. (R. at 238.) On July 10, 2006, Stumbo was reported to have impaired grooming and hygiene, loss of interest and crying episodes. (R. at 237.) His

affect was reported as flat and his mood sad. (R. at 237.) His thoughts were described as intrusive. (R. at 237.)

On October 5, 2005, Gary T. Bennett, Ph.D., a licensed clinical psychologist, evaluated Stumbo at the request of Stumbo's attorney. (R. at 189-94.) Stumbo reported that he had not consumed alcoholic beverages since June 2004. (R. at 191.) Stumbo reported that he had thoughts of suicide. (R. at 191.) The Personality Assessment Inventory, ("PAI"), was administered, and it showed a defensiveness about particular personal shortcomings as well as an exaggeration of certain problems. (R. at 191.) Bennett reported that it was likely that Stumbo's endorsements on the PAI were the result of confusion or careless responding. (R. at 191.) Bennett reported that Stumbo was at substantial risk for harming himself. (R. at 193.) He reported that Stumbo was easily aggravated and lost his temper quickly. (R. at 193.) Bennett diagnosed major depressive disorder, single episode, severe without psychotic features, generalized anxiety disorder and alcohol dependence in full sustained remission. (R. at 193.) Bennett indicated that Stumbo had a then-current Global Assessment of Functioning, ("GAF"), score of 51.[7] (R. at 194.)

Bennett completed a mental assessment indicating that Stumbo had a seriously limited, but not precluded, ability to follow work rules, to function independently, to maintain attention/concentration, to understand, remember and carry out simple

---

[7]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

-10-

instructions and to maintain personal appearance. (R. at 195-97.) He also indicated that Stumbo had no useful ability to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to deal with work stresses, to understand, remember and carry out complex and detailed instructions, to behave in an emotionally stable manner, to relate predictably in social situations and to demonstrate reliability. (R. at 195-96.) He indicated that Stumbo's impairments would cause him to be absent from work about one day a month. (R. at 197.)

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2006).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the

claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2007); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated April 24, 2006, the ALJ denied Stumbo's claims. (R. at 17-24.) The ALJ found that the medical evidence established that Stumbo had severe impairments, namely musculoskeletal impairments and gastrointestinal impairments, but he found that Stumbo's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19-20.) The ALJ found that Stumbo had the residual functional capacity to perform sedentary to light work that did not require more than occasional bending, stooping and crouching. (R. at 20.) Thus, the ALJ found that Stumbo could not perform his past relevant work. (R. at 22.) Based on Stumbo's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ concluded that Stumbo could perform jobs existing in significant numbers in the national economy, including those of a sorter, a hand packer, a cashier, an inspector and an assembler. (R. at 23.) Therefore, the ALJ found that Stumbo was not under a disability as defined in the Act, and that he was not eligible for benefits. (R. at 23-24.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2006).

Stumbo argues that substantial evidence does not exist to support the ALJ's decision that he was not disabled. (Brief In Support Of Plaintiff's Motion For Summary Judgment, ("Plaintiff's Brief"), at 4.) In particular, Stumbo argues that the

ALJ erred by failing to find that he suffered from a severe mental impairment. (Plaintiff's Brief at 5-9.) Stumbo also argues that ALJ erred by failing to identify a significant number of jobs that he could perform. (Plaintiff's Brief at 11-12.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

The ALJ in this case found that Stumbo did not suffer from a severe mental impairment. (R. at 19-20.) The Social Security regulations define a "nonsevere"

impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521(a), 416.921(a) (2006). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1521(b), 416.921(b) (2006). The Fourth Circuit held in *Evans v. Heckler*, that, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (emphasis in original).

The ALJ noted that he was rejecting the assessment of psychologist Bennett because it was not objectively supported or consistent with the record. (R. at 21.) The ALJ further found that "[e]ven if the claimant did have a severe mental impairment; with total abstinence from alcohol and other drugs, and proper mental-health treatment for a period of time of at least one year, it is doubtful whether any severe impairment would remain." (R. at 22.) Based on my review of the record, I do not find that substantial evidence exists to support the ALJ's finding that Stumbo does not suffer from a severe mental impairment. The record shows that Dr. Saunders diagnosed Stumbo with anxiety in December 2004. (R. at 158.) In March 2005, Dr. Thompson diagnosed Stumbo with an adjustment disorder with anxiety and depressed mood. (R. at 204.) Stumbo began counseling at Mount Rogers in May 2005 for complaints of

suicidal ideation and problems with controlling his temper. (R. at 201.) The record indicates that Stumbo was incarcerated for domestic violence in 2005, and as a result of those charges, he was attending Abuse Alternatives for anger management. (R. at 200.) In October 2005, Patty McAndrews, L.C.S.W., reported that Stumbo's condition was deteriorating. (R. at 200.) In June 2006, McAndrews reported that Stumbo's memory and concentration were impaired. (R. at 238.) In July 2006, McAndrews reported that Stumbo had impaired grooming and hygiene, loss of interest and crying episodes. (R. at 237.) The only evidence contained in this record to the contrary is the opinion of two state agency psychologists, who reviewed the record and rendered their opinion before it contained evidence that Stumbo's mental condition had deteriorated. That being the case, I do not find that substantial evidence exists to support the ALJ's rejection of Bennett's assessment or the ALJ's finding that Stumbo did not suffer from a severe mental impairment.

I also do not find that substantial evidence exists to support the ALJ's finding with regard to Stumbo's physical residual functional capacity. The ALJ found that Stumbo had the residual functional capacity to perform sedentary to light work that did not require more than occasional bending, stooping and crouching. (R. at 20.) Both Dr. Marine, Stumbo's treating physician, and Dr. Saunders found that Stumbo was limited in his ability to stand. (R. at 109, 158.) Dr. Marine found that Stumbo could perform light work, which allowed intermittent sitting and standing. (R. at 109.) Dr. Saunders found that Stumbo could stand and/or walk for up to four hours in an eight-hour workday. (R. at 158.) The ALJ failed to address this restriction in determining Stumbo's residual functional capacity. While an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King*, 615 F.2d at1020,

-15-

an ALJ may under the regulations assign no or little weight to a medical opinion based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings. Based on this, I do not find that substantial evidence exists to support the ALJ's finding with regard to Stumbo's physical residual functional capacity.

Based on my findings above, I do not address Stumbo's remaining argument.

*IV. Conclusion*

For the foregoing reasons, Stumbo's and the Commissioner's motions for summary judgment will be denied, and the court will vacate the Commissioner's decision denying benefits and remand this case to the Commissioner for further consideration of Stumbo's mental impairments and their effect on his work-related abilities.

An appropriate order will be entered.

DATED:   This 25th day of May 2007.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE